Good morning, Your Honors, and may it please the Court, Anthony Dane, appearing for Say Kim. What I'd like to do is go to the path of least resistance to demonstrate to the Court that the District Court's determination that, as a matter of law, this factual scenario could never be covered is clear error. You mean the patent mark claim? Yes, and let me start with this. Patent marking, if you read, and I'll start with the code section, 35 U.S.C. 292. False patent marking is false advertising. It's not a patent claim. I mean, the simplest way to know it's not a patent claim is this case went up to this Court at one point and came back down, and this Court doesn't hear patent claims, the Federal Circuit does. It's a false advertising claim. And let me just, and because there are many facets to it, but I'll read it as to the lines that apply to this case. Whoever without consent of the patentee marks upon or affixes to or uses in advertising in connection with anything made, used, or offered for sale, the words patent, quote, with the intent of deceiving the public and imported into the United States, buyer with the consent of the patentee, is a violation. So using the term patent, marking it on the device, on the advertisement, the box that the device was sold in, is a violation if one doesn't hold the patent. And as the Court said, this doesn't, the Court's decision is a matter of law that it could decide the case. All it was doing was interpreting a provision that's clear on its face. It didn't really need to be interpreted. Advertisement is a notice that is broadcast or published to the general public for specific market segments about your goods. On the device, on the box. The problem is, as I understand it, that although a definition of advertising injury might include this suit for a competitive injury because of the false marking, it doesn't. I mean, or at least the argument is that it doesn't in the sense that there is a specific definition in the policy for what an advertising injury is. And it only, it has to be essentially either a disparagement or a usurpation of an advertising idea as applied here. And in other words, I'm saying, what you're saying, you know, might be good English in the sense that this might be considered an advertising injury, but it isn't the way the advertising injury is defined in the policy. No, it actually isn't. I want to, I want to jump on something you just said. Might. The key is here. Actually, I think you're wrong about that. No, California law is clear that if there's a potential for coverage. But that means something else. It doesn't mean that if anybody in their right mind might think that this policy covers this thing, it means that if in the course of the litigation, it might develop that there's coverage. But once you know that it's there, you still end up litigating under the actual policy provision once you know what, what, everything there is to know about how the, this case is going to develop. And at this point, we knew everything there was to know about how the case was going to develop. Okay. And let's discuss how the case was going to develop. The, the manufacturer of this device was SayKim. SayKim was selling it exclusively through Cyclone. Say, SayKim put patented on his devices and on the boxes that were sold. So how does that disparage? Is your, is your theory that it disparages? This is why I'm taking the path of least resistance that gets you there. Let's go with the advertising use of another, the use of another's advertising idea. Somebody else's advertising idea. Idea. Exactly. Okay. So how is it that they stamped the word patent? When you put the word patent on a device and on, as it says in 292 advertising on the box, what you're doing is telling the public, and in this case, they call them shade tree mechanics, people that, that fix their own cars. This device is special. It's unique. It works the way you want it to work because it has a patent. Under the patent laws, nobody- How is that somebody else's advertising idea? Because, okay. And this is the, the, the, the, the confusion. You don't need to be the requirement of that, nor- But how is it even your idea? If the, if the, if the, if the stamp said, you know, we're the only patented one, first one, original one, that might be a disparagement, but I'm looking at advertising idea. Yeah. So let's forget disparagement for a moment. Okay. Say Kim, since 1994, this is eight years before this knockoff, had put the device, had marked the device as patent, patented, and the box that it's advertised in. People look at that. When you look at a product, if it's patented, you make certain assumptions about it. So the use of the word patented on a device is an advertising idea. It's a marketing idea. Yes, but you have to use somebody else's, they have to be using the idea of the purpose of suing and, and everybody in the world puts patented on. So why is that? You know why? Because when you're taught in marketing 101, when you convey to customers and want to attract customers, you tell them your device is patented. I know, but how did they usurp the idea of, of the, of the other Kim? Because it was Say Kim that first, it was his idea to put patented on his device and on the boxes. Cyclone was simply the distributor of that. When Cyclone knocked off its own device, what it did is put it in the box that's using Say Kim's testimonial, Say Kim's testing and Say Kim's use of patented and simply sold it within that. He did not have the patent. So the idea to use patented was Say Kim's. He was the original inventor. And, and you know, 9 jillion other people. It doesn't matter. It's wonderful. So, but what this statute is about, it's about, and we've just said this in case law, it's about using somebody else's manner or means of advertising their product. It's, it is, it is the manner and means that Say Kim used to advertise his product. Doesn't mean others can't advertise different products. Remember, there was no other product on the market like this. This, there was only, there were only two devices. Well, the product may be unique, but it's, but the advertising idea isn't. There is no case that says the advertising idea can't also be an idea that others employ. If you go, if you go to marketing school, if that's your, your experience, you're taught, here are the things you should always do in marketing. But if it's your device, you can pick and choose which one to use. You're not required to mark a device or put on the packaging that is patented. You don't have to. That's an issue for infringement and damages. Well, for one thing, I mean, it isn't even accurate because Say Kim's idea was to put patented on his, on his box because it was patented. And his idea was to put patented on the box even though it wasn't patented. Now, let me stop you there. You say his idea was to put the, the word patented because it was patented. It is not required, but it gives him an advantage, so he took advantage of that advertising idea. No, but I'm saying that his, his idea was to put a false statement as to patented as opposed to a true statement of patented. It's not even the same idea. It is the same idea. It's using the word patented. He just didn't have one. The false patent marking. So, so, so, sorry. It seems to me that it would work if he used his brother's logo, but you're seem to be saying that he's got this exclusive right to use the, the, the, the word patent is his, is his advertising idea. Ah, see, again, you're, you're making, that, that's where we, we have the problem. It doesn't have to be his exclusive idea. It just has to be his idea. So, let's look at our case law then, counsel. Did you ever allege anywhere that he used his brother's manner or means of advertising? I, that is what we're alleging. His manner or means of advertising is to use the word patented in his marketing. Can we talk about disparagement for a while, which I know you don't seem to want to embrace, maybe because of the reasons California Supreme Court case, but this is really my question. The, the, the, the strongest theory I can think of for you, and I just don't know whether there's actually, this, this is disparagement, is really, I mean, it, it, it, it, for some reason it's been left out of everything here that he also used the same name, right? It was Tornado 3 and then it was Tornado 2. So basically, the question is, when, when, by, by putting the, the, this false name patented on his box, he was essentially saying, we're as good as this other one with a similar name. Or better, because you're now selling a different device than the authentic one under the same name. Well, all right, but is, is that disparagement if it's not true that we're the same? We're, we're, we're, in other words, the, the relative ranking, he's essentially saying, we're, we're, our relative, it isn't, what we're disparaging is the notion that these guys are better because they're patented, because we're claiming we're also patented, so we're as good as them. I don't think that works as disparagement, but that is, seems to me to be the only possibility. No, the, the disparagement as the, and the trial court made a finding of this, that he was using the, the, the word patented on the device to deceive customers that his device was as good as or better than the device he had previously been selling, which was the authentic device. So while it may puff up, puff up his device, it's also saying mine is as good as or better. And if you're, if you have a finding by the court that it's in, in any way using the word better, that's a disparagement of Mr. Kim's device. And under 292, it allows you to sue for a competitive injury. The unfair business practice of false advertising includes disparaging the device. When you say competitive injury, that's with the change in the statute, correct? That's the change of the statute, which can... But that didn't exist at the time of the judgment in the underlying case. No, but it existed at the, it existed before Peerless... Withdrew? Withdrew. When, when did they withdraw? Peerless withdrew after the Court of Appeal, this Court of Appeal, remanded the case for a calculation under the new and revised 32 U.S. 292, which had included the competitive injury. Did, did they, did they withdraw from the case before we issued our opinion, or our memorandum? No. They withdrew from the case when it became clear that this was being remanded for a calculation on damages. So that's when they withdrew from the case. But there are several letters of withdrawal. Yeah, there, there, earlier it wasn't, their letters weren't of withdrawal, their letters of, were, statements were not covering... Right, were no longer going to represent you. Right. What happened is, and this is what is in the record, they said this is questionable, it, it was in their notes. They found out that Mr. Kim, J. Kim, was ill, and he was in financial trouble. After all of that is when the end, this Court's remand, is when they withdrew. That was at the time they withdrew. So how, when the Court adds that you now have a right to... When, when did they, when did they determine that they were, that there was no longer, that they were certain that there was no longer a potential for coverage? After this Court remanded to the District Court for a calculation of the competitive injury damages. Well, in their view, it was only because it was patent. And, and again, that's the point. It's not a patent claim, it's a false advertising claim. Yeah, we know that. Okay. And I'm sorry, I don't want to, I, I... I mean, that's all that was left. In their view, that was all that was left. That's all I meant. I, it's a very hard sale, to, for me to think that patent is somebody else's advertising idea, and I haven't been very subtle about that. But it might be a disparagement claim, it seems to me, and I'm actually, I'm, I think you have an uphill battle there, too, but at least there's an, there could be an implication there that, you know, we're patenting and you're not. But, but you understand what I'm saying is to find as a matter of law that it cannot be an advertising use of another's just because many people use patent, or that it cannot be a disparagement because it doesn't specifically say I'm disparaging you, is, is improper. There, there's still the potential for coverage. That's a question of fact. What do you mean by the potential for coverage? This has gotten very mixed up over the years, as I understand the case law. Yes. And I don't understand potential for coverage to mean it, it could be somebody might think it was covered. What it means, I mean, at some point, you have to make a decision whether it is or isn't covered, the court does. That's a question. And, it's a question of what? It's a question of fact, not a question of law. Why is it a question of fact? Because there is no. This is a contract, like any other contract. And the question, the potential for coverage is, for example, if you bring an action in this, to take this case, if you had brought an action for defamation and for, for breach of contract, but you couldn't, and suppose those weren't covered, but you couldn't, there was still a potential for coverage because as the case went on, maybe they were going to allege something else on these facts. All right? That would be a potential for coverage. Or, we don't know which way the case is going to come out on the facts. That's a potential for coverage. But once we know that there's nothing in this case but this false mark issue, there never will be anything else in the case other than the false mark issue. There, there's no potential left. It's either is or isn't covered. No, but, but see, there is, what you're saying is there's no question that it's under either use of another's advertising idea or disparity. And it either is or isn't. It either is or isn't. But then it's a question of fact whether the use of patented in an advertisement on the box, on the device, when there's no legal requirement to do that. It may be a question of fact, but it's summary judgment. It's subject to summary judgment. Wait, wait, counsel, why? Isn't it true that it has to specifically refer to plaintiff's product? No, no, that's the, now you're getting into disparagement, and that's by implication. That's it, that's what I'm trying to get to. That's right. Exactly. I understand. That's how the policy defines this. No, no. It can be by implication when, look, the only other product, the patented product was say, Kim's. Under the Swift case, doesn't it have to refer to the other product specifically? The Swift case said you can have disparagement by implication. There are only two products, so the comparison is to the prior product that they were distributing. So is the answer to my question, you think it doesn't have to refer to the other product? It does not have to refer to the name of the other product or the manufacturer of the other product or that it was the prior product. The fact of it can be by implication. And I'm sorry, the only thing, and I may be getting on your nerves on this, Judge Bersan, but the only thing I want to say is the question of fact is just very specifically is on the right to, the advertising idea of another is if a person uses patented on their product, is that an advertising idea? And a jury would have the right to say yes or no. You cannot as a matter of law say that I deem the use of a patent is not. All right. So that's what I'm saying. If our conclusion is that that would be the instruction, and under that instruction, no reasonable jury could conclude that this was an advertising idea, then you lose. Then that's, if that was the case, that would be an improper instruction. It would be because you can't say an advertising idea can only be one no one else has come up with. All right. Sorry. Thank you. Thank you. Almost good afternoon. May it please the court. My name is Scott Spaslovsky, and I'm here for the appellee peerless. I'd like to first start by describing what this case is not about. This is not a case about an insurer that denies coverage at the outset of a case. This is not a case about an insurer that withdraws a defense in the middle or right before trial. Peerless defended Sae Kim's brother and his brother's company, Cyclone, for nearly nine years. Trial through an appeal. Peerless did not withdraw the defense until after this court issued a remand, and Sae Kim irreversibly limited his case to one claim and one issue, and that was the calculation of damages under section 292. That was the only thing that was left, and at that time Peerless withdrew coverage, and it properly did so because it's not false patent marking is not an enumerated offense under the policy. It does not qualify as disparagement under controlling case law from the California Supreme Court as well as numerous decisions from this district, nor does it qualify as the use of another's When he, when the court, our court sent it back for trial, in light of the new, on the damage amount, in light of the new statute, competitive injury, what was, what would have been contemplated under that? The only thing left was the proper measure. What was competitive injury? What does competitive injury mean? Any harm that was suffered. The harm that was suffered from the false patent. So how would they prove up without? Well, I can say how they did do it. They did it first by, by declaration in motion. No, no, no. I mean, what's the competitive harm? That's a good question. I, I, I do not know what their, what their alleged, their competitive harm would actually be because here... Could it be the use of their idea? But it wasn't. It wasn't the use of their idea. The charge was that Cyclone had stamped patented on a device that was not in fact patented with the intent to deceive the public. There was no allegation that, that by doing so, that this specifically disparaged, say, Kim's product. But what about this argument that it could be disparagement by implication? And so if the implication is, you know, we're patented, as I said, you're, we're patented and, and you're not. We're the first, we're the original. What, what about that implication? Right. Great question. And the California Supreme Court in Hartford v. Swift rejected a similar argument. Well, we just went over that with Swift. Well, if I'm... Is it because it didn't specifically refer to or why doesn't it qualify? Well, if I may, in, in that case, the insured there said, well, I'm, I'm triggering coverage because I impliedly disparaged my competitor's product by saying in my catalog, in my advertisements, that my knockoff product was patent pending. The California Supreme Court said, that's not specific enough. That doesn't necessarily mean that somebody else's product is inferior. But was it not specific enough, counsel, because it didn't refer to the other product? Both. It doesn't, it doesn't specifically refer to another product. Well, I don't know why this doesn't refer. It has the same name. I mean, if, if, if it's calling itself Tornado 3 and that was Tornado 2, it's suggesting, even by the numbers, that Tornado 3 is better than Tornado 2. I mean, it's, it's not just in the sky. So why isn't it referring to Tornado 2? The California Supreme Court has made it clear that you must have a false or misleading statement that specifically refers... All right. Well, that's a different point. That's a different point. Okay. So therefore, I, and this is essentially what I said to your opposing counsel. So why is it, or isn't it a disparagement just to say, or, or, or to imply pretty strongly that we are just as good, or he says, they said as good or better than Tornado, we're Tornado 3 and we're patented and Tornado 2 is patented. So at least they're no better than us. And so in ranking, in other words, ordinarily, it isn't that they're better than us because they're patented. They're really the same as us. So is that disparaging of Tornado 2 by saying that, that they're, they're, they're not at a higher level than we, they're really at the same level? Is that disparagement? No. And this court... Now why not? Well, this court has rejected that argument on several occasions. The court in, in Homedics, in Microtech, in, in, in Bullpen, in KFX just last year, this court has rejected that argument and said claims of equivalence are not enough. But it's, but it's Tornado 3. It's like my newer iPhone. It's got a bigger number on it. And that's a, and that's a true statement. It is a Tornado 3. Right. Correct. What they're, what they're claiming is, is the false statement is that you stamp patented. Right. But that's the charge under 292. There's nothing else. There's, there's no, there's, there's, there's no... So this, now you're responding differently to Judge Berzon's question. Oh, I'm sorry. I'd like to focus. Which is that, no, no, I'm not trying to be difficult, but her hypothetical, which I think is really interesting, and it's one I kicked around with my law clerk as well, goes to this using Tornado, using Tornado 3 in conjunction with patented. But I think the allegation is patented, that that's the advertising idea or the disparagement, just the word patented. Right. And that, and it's neither. You don't disparage, and the, and the California Supreme Court said... But they got a competitive injury damages, presumably because it was, there was enough connection between, inherent connection between these two products that if the, by falsely marking Tornado 3 as patented, it affected the market in, in Tornado 2. Why? Presumably because people thought, oh, this is a, you know, at least equivalent or better product than Tornado 2, so we think we'll buy it. Right? So, so they're knocking, I mean, I, I, I, I, you, you gave me a bunch of cases and I haven't, I, I'm not acquainted with why, why you are so firm that they say that when you're, when you're saying, when, when X is really better than Y and you're saying it is, oh, it's not better than Y, it's the same as Y. Why isn't that disparaging X? Well, the... From, from, from, by saying, you know, you may think they're better than us, but they're not better than us. They're just no, they're no better than us. This, this court has rejected the argument that claims of equivalence or even claims of causing consumer confusion... Claims of what? I'm sorry. That claims of equivalence... I heard that. Or, or causing consumer confusion are enough... It's not confusion. It's not about confusion. Give me an example of one of the equivalence cases. What were the facts? I don't have them. In, in, for example, in, in, in Bullpen, the, there the insured was accused of passing off a competitor's achievements and services as its own on their website, in an actual publication. They were sued by the competitor and the insured said, well, that triggered coverage because there's an implied disparagement. The court there, this court said, that's not enough. That's not enough to, there's no actual allegation that just because you're passing off somebody else's goods or services or products as your own, that does not mean that you are expressly or impliedly disparaging somebody else. You could have those same achievements. The other party could also have those same achievements that were, that were mentioned, that were discussed on, on the party's website. That's not enough. And this court... It's not a passing off problem. It's that they put, they, they marked the box in a way that, and I don't know whether this flies, but it, it, it just seems to me, I mean, if I were simply using the term disparagement in some ordinary English way, I would think, well, you are disparaging a superior product by saying it's actually not a superior product. That's disparaging it. The California Supreme Court in Hartford v. Swift said using terms such as superior and innovative or unique are not enough. That's a puffing, I understand. Exactly. That's not what happened here. Well, what, what happened here was not a mark on a box, but instead a mark on a product. And that mark on the product, just by stamping patented, there's nothing... I'm sorry, we're not talking about the mark on the box? No, we're not. They're, they're complaining about stamping the word patented on a product, a product that they, that they allege was a cheap, inferior knockoff. They've never said that they, that they were offering for sale something that was better. They never said that they were offering for sale something that was unique or special or that another competitor, you know, did not have. This is different than those cases that have recognized, impliedly, that when somebody says, I am the only owner of a trademark or I'm the only producer of a software, well, if you do that to the exclusion of, of everyone else, well, that's necessarily by implication going to disparage your competitor because it's going to suggest that, well, they don't also have that. Even if it doesn't refer specifically to their product under Swift? It, it would do so, well, in those, in those limited cases, it would do so only by, by implication. If I said I'm the only one. If I'm the only one. Yeah. Right. Right. And so when you, when you stamp patented, patented for what? The design? The function? What does that convey? You, you, you, that all that conveys is that the, the holder of this, of this product thinks that they, that they can presumably patent the product or that they have permission to What was open at the time that the lawyers withdrew was the damages. Correct. The competitive damages. What did they have to show to get to competitive damages? They, well, they would have, they would have to show that by Cyclone marking its product patented when it wasn't, that it somehow suffered some sort of competitive harm. I, I understand that, but how, how do you do that? That, that, that's a, that's a good question, Your Honor. I, I, I don't know how you do that, but what's. Well, they could also, they still had the availability of just the statutory damages. Well, the, the statute, oh, the $500 statutory. Yes, I believe, I believe so. But the remand was for damages and that's the point at which the lawyers pulled out. That, that's correct. Okay. So, so if the dam, if the competitive damages bear a pretty good relationship to a disparagement claim, then you'd think they couldn't pull out. So I'm trying to find out whether the competitive damages would essentially require some showing that people who would have liked Tornado 2 before understood that Tornado 3 was in some sense saying, Tornado 2 is not as good as you, not, not as, not any better than we are. And therefore, and, and, and because we're both patented, so it's not a superior product, so you should buy ours. I mean, it's something like that must have been going on in the competitive damages notion. Well, even if it was, we have to remember the procedural posture of this case is critically important. This isn't a time where they could amend a counterclaim and assert, and now assert disparagement. I understand. It's a time in the trial. Focusing on what they actually had to show to get the competitive injury. Right. And so, and so because of the procedural posture, because they were limited only to, to those damages, then the court would have to equate false patent marking with disparagement. We said they could show competitive damages. I'm sorry? We said in the remand that they could, they could attempt to show competitive damages under the new statute. Competitive injury, right? Right. That's true. Competitive injuries. So what would they have shown? Well, they, I, I, I can only speculate as to what they would have tried to show. Is there another case in the world where anybody's ever gotten a competitive injury for, for false mark, patent marking? Oh, I, I'm sure. I mean, if you like, we can, we can. Well, I mean, it may not be because it was a pretty recent amendment. That's why I'm kind of wondering. Right. No, I, and, and I do not know what, what they would have to show. What I do know is that they couldn't show disparagement, and that's because what's missing from here, and what this court recognized in, in Microtech and a number of other cases, is that if you don't actually have a disparagement claim, there's not going to be coverage for it. There's, there, there has to actually be a statement, a false or misleading statement that disparages your competitor. Can I ask a question? So were a, a, a, a overlap between the two in the sense that what you had to show to get the competitive injury was essentially something that you would also meet disparagement, then it would work? And I don't know the answer to that because nobody seems to know what you have to show to get the comparative injury. I, I would say under, under that hypothetical, if this case was still at the pleading stage or even before trial, what, what that would mean is that there was perhaps a potential. That's just not right. But, but that's the duty to defend, Your Honor. That, that's, that's what. Yes, I know that, but, but I'm asking what do they actually have to demonstrate at the point that this case was, which was at the point of competitive injury, what were the elements of that? Nobody knows. They, they have to show, they, they have to show that they suffered harm from, from cyclones. And how are they going to do that under these circumstances? Presumably, they're going to have to show something about how consumers would have reacted to this false patent marking, which would have led them to buy this instead of that, right? Possibly. That, that's possible. But what's still missing is any specific disparaging statement that specifically refers to, say, Kim's goods or his business and necessarily derogates that product or business. At the time Jay Kim started marking his product patented? Yes. Had, say, Kim marked his products? His product was also patented, yes. So, I'm asking about chronologically. Yes. At the time Jay started using that mark, a stamp. Correct. Were the products coming out of Korea also marked that way? Yeah, I'm sorry. I thought I did. Yes. The, the, say, Kim had already been marking his product patented. Okay. So, here's why I'm asking the question, counsel. I'm trying to, your opposing counsel thinks this is a path of least resistance and I'm struggling with that. But what if he thought, because after all, the ruling was as a matter of law, what if he thought, okay, my idea, this is how he's going to advertise his product, by marking it patented. Right. So, I'm going to steal that idea by marking mine patented, too. That's the only way I can possibly think this is a, this is a stealing somebody else's advertising idea and I had originally understood that at the time he started stamping his product, the other didn't have the stamp. But is that wrong? He said it's wrong. I, I, that I, that the Tornado product is not an advertisement. That's the argument. No, but his argument is that the stamping it patented is the advertising idea. Correct. But it has to be a use of an advertising idea in your advertisement. Yes. The only advertisement that they've identified is the product itself. Use of another's advertising idea in the insured's advertisement. Correct. Okay. So, you're saying there isn't one in the same. He only two things. A false mark and intent to deceive. That, that's it. And then, and then. So, his product, problem then is, to answer my question because your time, you're over, is the stamp was on the product, not on a catalog or a box or anything else? Not an advertisement? That, that is, that is what is alleged. That's what was proven at trial. That was the only issue on remand. And it's not covered for that reason. It's not covered. It's not covered because the product does not qualify as an advertisement as the policy defines advertisement. Your ultimate argument is that this wasn't an advertisement at all? The product itself was not in an advertisement. Does not fit with. Stamp on it? Well, and that would not be an advertising idea. And that's because the policy, the way the policy defines what an advertisement is. Is it an advertisement for purposes of a disparagement rule? No, it's not. It's. Your ultimate argument is it's just not an advertisement. It, well, the, the product itself is, it's not an advertisement and. And the stamp on it's not an advertisement either. It's not an advertising idea. That's correct. I mean, it's not an advertising injury, period, at the end, because it's not an advertisement. It, correct. Why, why did we just talk about something else for, for, for 15 minutes? Happy discussion. Whatever you like. Answer this, answer this question. Well, no, but I, I never understood you to be arguing that. I thought the whole premise here was exactly that, that at least the, the stamp on, on the product, I thought it was the box, frankly. I will ask your opposing counsel. But whichever it is, was an advertisement. The question was, was it an advertising injury of the particular kinds that are covered? Now you're telling me it's not an advertisement at all. That, that's great. It doesn't, it doesn't come within the policy definition of, of an advertising injury or an advertisement. It's, it's not within the insuring agreement under the policy itself. Okay. Great. Okay. We'll take that as your last statement. Fair enough. Thank you very much. Okay. Yes. You could have a minute for rebuttal. I need to correct two things. One, I think I know where the disconnect I had with Judge Persaud is, but I want to address this, this first. This court remanded for a determination of competitive injury under the newly enumerated statute. Right. So you can't argue that you're shot out because you didn't do at the pleading stage what had not yet been required of you. Is it true that the only issue here is the stamp on the product as opposed to on the box? No. No. What we would be allowed to do in terms of proving a competitive injury is the false advertisement because advertisement is... Where's the advertisement? Now, there is an advertisement, not just on the product. People pull it out and look at it on the product, in the box, on the box. But also you mentioned the... On the box or in the, on the product? Both. On the box and the product Why does he claim then that you're only complaining about the stamp on the product, not the stamp on the box? Because originally the false marking claim under the old statute was a marking of the device. Did you ever allege anything other than the stamp on the product? I honestly, I don't recall. Because I don't see it. I don't, I don't recall because that wasn't under the old statute. I mean, that's the answer to Judge Persaud's question. Yes. The reason he says that is because I don't think you've ever need to correct something. Prior to this, under 292, it was a penalty statute. So if the product was not marked, I mean it was marked, you had penalties. We cannot get penalties under the new statute. That's confined to only the United States. We must get competitive injury and that's where you're allowed to prove the Now placed in a box. Not only saying cycle, the new cyclone, but it was using testimonials. It was using... But counsel, on remand, did you make that allegation? We haven't, we didn't get to it because remember, Jay Kim died. First of all, on remand, his attorneys were gone. Okay, fair enough. Apart from today, when you're standing at the podium, did you ever make the allegation that there was this, that, that, that, that you used this advertising idea in an advertisement? Hold on. Not that we use the advertising idea because understand, this was remanded. We didn't represent Jay Kim and Cyclone at the time. It's a settlement with Cyclone and then we took over. So the first time we can discuss it is after the fact. If you don't have an allegation that another advertising idea was used in your client, in the insurance advertisement, you don't have a covered event. No, no. We do have a covered event because of the competitive injury remand. That's how you prove competitive. But the competitive injury remand, as I understood it, was to get a competitive injury for what you'd already succeeded in establishing liability for, not starting all over again. Oh, no, no. And we did in the original complaint, it was not under the false marking. The complaint, it, like when you allege a false marking claim, you incorporate everything that's in the rest of the complaint. In the complaint, we said that they used Say Kim's advertising, including the Cyclone name, including the box testimonials. Where? That's what I've been asking, counsel. Where? It's in the complaint. I don't, I'm sorry. In the underlying complaint. The underlying complaint. Is it in the record? That was Say Kim's. Yes, that's on the record. That was Say Kim's allegation of Jay Kim. With Jay Kim, at the time, again, you have to remember the chronology. This gets remanded to prove a competitive injury, which can be not only disparagement, as you're saying, saying now I've got a Cyclone 3, I need to correct something. Cyclone 1 was ours. Cyclone 2 was a device that had what was called a bullet in the device, but both of those were knockoffs. The third device was also stated as patented. So it was really saying from Cyclone to, I mean, Tornado to Tornado 3, this third Tornado. So they had done this twice. But in the underlying complaint, we proved false advertising. You mean alleged? We alleged, no, the court found it, it just didn't find fair competition based on this false marking. But what the court said is it was confined to a $500 penalty because that's what the statute, it understood the statute to be. So what I want to say is on remand, Cyclone had the right and Say Kim had the right to prove the competitive injury, which is where the disconnect is. Now I understand, Your Honor, what you're getting at. The disparagement is, yes, now you were selling my product as Tornado. Now I don't know you're doing this, but suddenly you stop using the one I'm using, you stop buying from me. And you put in the box with my name, my testimonials, my testing, and the word patented that I had had on my devices beforehand. Say Kim had since 1994 used patented. Cyclone was selling Say Kim's device in the United States. Then they start saying ours is now patented. And so, again, I get to, as a matter of law, to say that we can't prove competitive injury because the word patent, whether it's on the device. They're not saying you can't prove competitive injury, they're saying you can't prove disparagement. Did the case ever get to the point of anybody spelling out what would have to be proved for competitive injury? It settled because Say Kim had no attorneys and he died of brain cancer. This was six months before he died. He had no attorneys, no way to defend himself. We've let you go a long time. I'm sorry.  Thank you, Your Honors. In our last case for argument this morning, it's King v. Blue Cross.
judges: Paez, Berzon, Christen